# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00477-CV

**Martha Flores, Individually and as Next Friend of Alicia Flores, Teresa K. Knobles, Consuelo Walker, Individually and as Representative of the Estate of Consuelo Flores, and Manuel Flores, Appellants**

**v.**

**Daryl Eakin, M.D.; Lone Star Oncology Consultants, L.L.P.; and Round Rock Hospital, Inc. d/b/a Round Rock Hospital, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GN-00-002602, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants, the surviving children of Consuelo Flores, sued appellees, Dr. Daryl Eakin, M.D.; Lone Star Oncology Consultants, L.L.P.; and Round Rock Hospital, Inc. d/b/a Round Rock Hospital, alleging that appellees' negligence proximately caused Flores's death. Appellees successfully moved to strike opinions of appellants' expert and subsequently obtained a final summary judgment that appellants take nothing on their claims. In two issues, appellants challenge two district court orders striking the expert opinions and the subsequent summary judgment.[1] We will affirm the judgment of the district court.

---

[1] The Honorable Darlene Byrne granted the two orders striking the expert opinions, while the Honorable Margaret Cooper rendered the final summary judgment.

In March 1998, at age 75, Flores was diagnosed with rectal cancer. While still being evaluated for treatment, in April 1998, Flores was also diagnosed with lung cancer. There is no dispute that these two primary cancers were independent and unrelated. Flores underwent surgeries to treat both cancers along with chemotherapy and radiation therapy. Flores saw Dr. Eakin, an oncologist, as part of that treatment.

On June 26, 1998, Flores, who had been experiencing nausea, vomiting, and diarrhea for several days, was admitted to Round Rock Hospital. While in the hospital, she began running a fever, and various medications were administered. She died in the hospital on July 4, 1998.

Appellants sued Dr. Eakin; Dr. Eakin's practice group, Lone Star Oncology Consultants, L.L.P.; and Round Rock Hospital, alleging negligence in the care and treatment of Flores. Appellants hired Dr. Rhett K. Fredric as their expert witness. Appellees filed a joint motion to strike Dr. Fredric's opinion testimony on the grounds that, among others, the testimony was unsupported speculation and, therefore, unreliable. Specifically, appellees challenged the reliability of Dr. Fredric's opinion that where a patient is afflicted with two cancers, the patient's probability of surviving the cancers is determined by the survivability of the more serious of the two cancers alone.[2] Additionally, Dr. Eakin filed a separate motion to strike certain opinions of Dr. Fredric regarding whether Dr. Eakin's performance had been impaired by his alleged use of pain medications.

---

[2] Appellees also challenged Dr. Fredric's reliance on the "Apache II" scoring method to determine how the timing of administering antibiotics affects survivability of any one cancer. We need not address this aspect of Dr. Fredric's testimony because the reliability of Dr. Fredric's testimony as to the combined effect of two primary cancers is dispositive.

The district court granted Dr. Eakin's motion and, in part, appellees' joint motion, including striking Dr. Fredric's opinions as to "the survivability of two cancers based on unreliability and irrelevance." Appellees subsequently filed no-evidence motions for summary judgment, which the district court granted.[3] This appeal ensued.

In two issues, appellants contend that the district court abused its discretion by striking Dr. Fredric's opinion testimony and, consequently, erred in granting final summary judgment. We need only address the district court's order striking Dr. Fredric's opinions regarding the survivability of Flores's two cancers, as it is decisive of both issues.

To prevail on a medical-malpractice claim, a plaintiff must show (1) a legal duty, (2) breach of that duty, and (3) damages proximately caused by that breach. *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003). "Texas courts have long recognized the necessity of expert testimony in medical-malpractice cases." *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 876 (Tex. 2001).

To establish proximate cause in a medical-malpractice claim, the plaintiff must show by competent medical testimony that the negligence of one or more of the defendants proximately caused his injuries. *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399-400 (Tex. 1993); *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988). "The negligent act or omission [must be] shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Kramer* at 399-400 (citing *Havner v. E-Z Mart*, 825 S.W.2d 456, 459 (Tex. 1992)). To meet this burden, appellants were required to present legally sufficient evidence that Flores more

---

[3] Eakin's motion also sought summary judgment on traditional grounds.

likely than not would have survived her two cancers; otherwise, any acts of appellees could not have been a proximate cause of Flores's death.[4]

Because Texas does not recognize the "lost chance" doctrine, there is no liability for negligent medical treatment "that decreases a patient's chance of avoiding death or other medical conditions in cases where the adverse result probably would have occurred anyway." *Id.* at 398. If the plaintiff had less than a 50 percent chance of survival absent the defendant's negligence, the plaintiff's claim is barred. *Id.* at 400. "Hence, where preexisting illnesses or injuries have made a patient's chance of avoiding the ultimate harm improbable even before the allegedly negligent conduct occurs—i.e., the patient would die or suffer impairment anyway—the application of these traditional causation principles will totally bar recovery, even if such negligence has deprived the patient of a chance of avoiding the harm." *Id.*

In a medical-malpractice case, reasonable probability of survival is determined by the substance and context of an expert's opinion. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995). The dispositive issue as to the appellants' claims is whether Flores probably would have survived absent any negligence by appellees. To avoid summary judgment, appellants had to present legally sufficient evidence that there was a 50 percent or greater chance that Flores

---

[4] As appellants explained in their brief,

Dr. Frederic's [sic] causation opinions are essentially that Ms. Flores' cancers were survivable, her infection would have been survivable if antibiotic treatment had been started promptly when Ms. Flores spiked a fever, and that Dr. Eakin's abuse of prescription pain medication would affect his ability to pay necessary attention to Ms. Flores' declining condition.

would have survived absent appellees' alleged negligence. To provide that evidence, appellants relied solely on the testimony of Dr. Fredric.

Dr. Fredric testified that Flores had a greater than 50 percent chance of survival of her cancers because there was a 62 percent five-year survival rate for the lung cancer and a 70 percent five-year survival rate for the rectal cancer. He opined that the survival rates for a patient with two primary cancers must be determined by looking solely to the survival rates for the most serious cancer. He dismissed the notion that the presence of the second primary cancer would impact the survivability of the first. According to Dr. Fredric's April 4, 2007, deposition testimony:

> Q.      If [sic] have 62 percent chance of survival because of my lung cancer and only a 70 percent chance of survival because of my rectal cancer, then doesn't my chance of survival have to be something less than 62 percent, if you're just applying a statistical analysis?
>
> A.      No, I don't think so. And I'm not sure how to respond to that fairly. I've never seen anybody that I'm aware of address that issue, so there may be some – something you may have some knowledge of that I don't know.
>
> Q.      Okay. Maybe addressed in the literature, but you have you haven't seen it?
>
> A.      Yes - no sir, I haven't.

Later, in a supplemental affidavit dated May 1, 2007, Dr. Fredric averred:

> When a patient has two primary cancers, the patient's overall survivability is based upon the individual cancers and their survivability. I am aware of no medical literature that measures survivability of two separate primary cancers in any way other than by addressing the survivability of individual cancers. While a patient with two primary cancers may experience complications that patients with one cancer may not, it does not follow that patients with two primary cancers will experience different overall survival rates from the patients with a single cancer. I am aware of no mathematical formula accepted by physicians that can be applied in this scenario.

In other words, one may not simply multiply the probability of survival for the two cancers to arrive at a new survival percentage. Such a calculation would lead to the absurd result of a patient with one cancer with a zero percent five year survival and one cancer with a one hundred percent five year survival having an overall fifty percent chance of survival. Clearly, that is not the case.

A trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). If a party opposes and objects to the admission of expert testimony, the proponent bears the burden of demonstrating its admissibility. *Robinson*, 923 S.W.2d at 557.

Expert testimony is admissible if (1) the expert is qualified, and (2) the testimony is relevant and based on a reliable foundation. *Wilkins*, 47 S.W.3d at 499; *Robinson*, 923 S.W.2d at 556. Scientific testimony is unreliable if it is not grounded "in the methods and procedures of science," and amounts to no more than a "subjective belief or unsupported speculation." *Robinson*, 923 S.W.2d at 557 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). Expert testimony is also unreliable if "there is simply too great an analytical gap between the data and the opinion proffered." *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 727 (Tex. 1998) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Factors used by courts to determine whether expert testimony is reliable include:

1.  the extent to which the theory has been or can be tested;

2.  the extent to which the technique relies upon the subjective interpretation of the expert;

6

3.      whether the theory has been subjected to peer review and/or publication;

4.      the technique's potential rate of error;

5.      whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

6.      the non-judicial uses which have been made of the theory or technique.

*Robinson*, 923 S.W.2d at 557. These factors are non-exclusive and flexible. *Id.*

Here, Dr. Fredric offered no support for his opinion that the presence of two separate primary cancers results in a prognosis identical to the individual prognosis of the more serious of the two cancers. Dr. Fredric admitted, however, that "a patient with two primary cancers may experience complications that patients with one cancer may not." Although Dr. Fredric reasoned that the survival rates of the two cancers cannot simply be multiplied, he offered no support for this assertion, just as he offered no support for his theory that the survival rates must be considered separately. Without support from any scientific evidence or documentation, these opinions, without more, require too great an analytical leap and amount to mere unsupported speculation. *See Gammill*, 972 S.W.2d at 727. As it was appellants' burden, once challenged, to prove the evidence reliable, *see Robinson*, 923 S.W.2d at 557, the district court acted within its discretion in striking Dr. Fredric's causation testimony based on Dr. Fredric's "inability to testify on [Flores's] survivability of the two cancers." *See id.* at 556-58. Accordingly, we overrule appellants' first issue.

As for appellants' second issue, appellees filed a "no-evidence" summary judgment challenging, among other elements of appellants' claims, causation. To avoid summary judgment, appellants had the burden to present expert testimony on each challenged element. *See IHS Cedars*

7

*Treatment Ctr.*, 143 S.W.3d at 798; *Palacios*, 46 S.W.3d at 876.  Having held that the district court acted within its discretion in striking Dr. Fredric's causation testimony as to survivability, we, likewise, hold that the district court did not err in granting summary judgment against appellants on no-evidence grounds.  Accordingly, we overrule appellants' second issue.

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   August 22, 2008